UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALLAN LEE WHITE,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-05842-RBL-KLS

REPORT AND RECOMMENDATION

Noted for August 12, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, the decision to deny benefits should be reversed and this matter should be remanded to defendant for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On October 30, 2007, plaintiff filed an application for SSI benefits, alleging disability as of September 15, 2004, due to an attention deficit disorder, psycho-motor deficits, personality disorders/psycho-social problems, depression, and a lower back injury. <u>See</u> Administrative

REPORT AND RECOMMENDATION - 1

Record ("AR") 12, 124, 170. His application was denied upon initial administrative review and on reconsideration. See AR 12, 62, 70. A hearing was held before an administrative law judge ("ALJ") on October 29, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See AR 27-59.

On November 30, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 12-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 23, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481. On November 16, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1. The administrative record was filed with the Court on January 24, 2011. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in not finding his cognitive impairment and anxiety disorder to be "severe" impairments at step two of the sequential disability evaluation process[1]; (2) in assessing plaintiff's residual functional capacity; (3) in finding him to be able to perform his past relevant work; and (4) in finding him to be capable performing other work existing in significant numbers in the national economy. Defendant concedes the ALJ erred in determining plaintiff could perform his past relevant work, but argues that such error was harmless. For the reasons set forth below, the undersigned agrees with plaintiff that the ALJ erred in determining him to be not disabled, but recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

REPORT AND RECOMMENDATION - 2

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

REPORT AND RECOMMENDATION - 3

1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff's attention deficit disorder to be a severe impairment. See AR 14. Plaintiff argues the ALJ erred in not finding his cognitive impairment and anxiety disorder to constitute severe impairments as well. The undersigned agrees the ALJ erred here in regard to plaintiff's anxiety disorder, but not in regard to the cognitive impairment. With respect to the latter impairment, plaintiff argues the ALJ should have found it to be severe in light of the neuropsychological evaluation performed by David H. Fordyce, Ph.D., in early January 2009, in which Dr. Fordyce opined that plaintiff demonstrated "evidence of mild cognitive impairment, primarily in [the] areas of fine motor and cognitive speed." AR 371; see also AR 370 (scoring in mildly impaired range on brief fine motor screening test).

Specifically, plaintiff argues the ALJ erred by not explaining why he rejected the findings made by Dr. Fordyce here. But as those findings clearly show, plaintiff exhibited at most mild a cognitive impairment, with no indication such impairment had a significant – i.e., any more than a *de minimis* – impact on plaintiff's ability to perform work-related tasks. As plaintiff points out, another medical source in the record, Molly H. Warner, Ph.D., who evaluated him in late March 1997, also obtained testing scores suggesting "borderline to mild impairment in" his "cognitive abilities," along with "somewhat slow" but otherwise normal finger tapping speeds in regard to his left hand. AR 215-16 (noting "[m]ildly slower" tactile performance concerning left hand as well); see also AR 217 (stating further that neuropsychological evaluation suggested "borderline normal to very mild difficulties in cognitive functioning"). Again, though, as with Dr. Fordyce's findings, these findings too reveal no more than *de minimis* functional limitations.

REPORT AND RECOMMENDATION - 4

As for the impact of plaintiff's anxiety disorder, Thomas Carollo, M.D., did make such a diagnosis in early January 2008, and he doubted whether plaintiff "could deal with the usual stress encountered in a competitive workplace given an apparent lack of appropriate coping skill." AR 232-33. While the anxiety disorder was not clearly linked to the limitation on dealing with stress, it cannot be ruled out as at least partly the cause thereof. In addition, the undersigned finds the ALJ's failure to discuss the anxiety disorder diagnoses at step two here is not harmless, given that as discussed in greater below the ALJ erred in finding plaintiff could perform other jobs at step five of the sequential disability evaluation process without considering the impact of the limitation on dealing with stress. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error deemed harmless only where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

II. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable

REPORT AND RECOMMENDATION - 5

impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity to:

**. . . [T]o perform light work . . . That is, to lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently, stand/walk for about 6 hours of an 8 hour workday, and sit at least 2 hours of an 8 hour workday, and while performing at that level of exertion, he would be precluded from working at unprotected heights, climbing or moving or dangerous equipment. Furthermore, he would be limited to public contact, low stress unskilled tasks and simple 1-2 repetitive tasks.**

AR 16 (emphasis in original). Plaintiff argues this RFC assessment is incomplete, since it lacks any manipulative limitations. But as discussed above, the evidence in the record reveals at most only minimal work-related limitations. Accordingly, the ALJ was not remiss in not including in his assessment of plaintiff's residual functional capacity any such limitations. As for limitations stemming from Dr. Carollo's anxiety disorder – namely, the above-noted problems dealing with the usual stress encountered in the competitive workplace – the ALJ expressly limited plaintiff to low stress unskilled tasks. The undersigned finds the stress-related limitations Dr. Carollo noted thus are adequately accounted for here.

III.   The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing his past relevant work as an art model and lecturer. See AR 20. Plaintiff has the burden to show that he is unable to return to his past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Plaintiff argues the ALJ erred in finding him to be capable of performing the above past relevant work, because it was not performed at substantial gainful activity levels, and because the skill level needed to perform it is inconsistent with the limitation

REPORT AND RECOMMENDATION - 6

to unskilled work contained in the ALJ's residual functional capacity assessment. See 20 C.F.R. § 416.960(b)(1). Defendant concedes the ALJ erred here, but argues such error was harmless in light of the ALJ's alternative findings at step five of the sequential evaluation process. But as discussed below, the ALJ's alternative step five findings are not free of error, and thus neither is the ALJ's step four determination.

IV. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). See Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity, but, as pointed out by plaintiff, it did not include the limitation to performing

REPORT AND RECOMMENDATION - 7

low stress tasks. See AR 54-56. Thus, the hypothetical question cannot be said to be completely accurate, even in light of the ALJ's own RFC assessment. The vocational expert's testimony that there are other jobs plaintiff could do, therefore, cannot be relied upon to find him to be capable of performing other jobs existing in significant numbers in the national economy as the ALJ did in this case. See AR 20-21, 56-57.

V. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to plaintiff's ability to perform other jobs at step five of the sequential disability evaluation process given his limitation to performing low stress unskilled

REPORT AND RECOMMENDATION - 8

tasks, this matter should be remanded to defendant to conduct further administrative proceedings in regard to that issue.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly determined plaintiff to be not disabled. Accordingly, the Court should reverse defendant's decision, and should remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 12, 2011**, as noted in the caption.

DATED this 25th day of July, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9